UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEROY WOODS,

        Plaintiff,

v.                          CASE No.  8:12-CV-538-T-TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

        Defendant.

_____

ORDER

      The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence, the decision will be affirmed.

_____

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

Moreover, the plaintiff's request for a remand for the consideration of new evidence is denied.

I.

The plaintiff, who was thirty-five years old at the time of the administrative hearing and who has a ninth- or tenth-grade education, has worked previously as a cook, dishwasher, and conveyor attendant (Tr. 35, 36, 38, 64).    He filed claims for Social Security disability benefits and supplemental security income payments, alleging he became disabled due to emotional problems, a steel rod in his right leg, and an inability to spell (Tr. 144).  The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "depressive disorder, antisocial personality disorder, polysubstance abuse dependent reportedly in remission, and residuals of right tibular fracture repair" (Tr. 19).  He concluded that the plaintiff (Tr. 21)

> has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and
> 416.967(b) with the following additional
> limitations: the claimant cannot have any contact
> with the general public; he can have only brief and

> superficial contact with co-workers; and he
> requires a low-stress work environment, which is
> defined as a job that requires only simple decision-
> making with only a few changes in the work place.

The law judge ruled that these limitations prevented the plaintiff from performing past work (Tr. 24). However, based upon the testimony of a vocational expert, the law judge found that the plaintiff could perform other work that exists in significant numbers in the national economy, such as housekeeping cleaner, an inserting machine operator, and a laundry worker (Tr. 25). The law judge therefore decided that the plaintiff was not disabled (Tr. 26). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled before his insured status expired on September 30, 2009, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's sole argument for a reversal under sentence four of 42 U.S.C. 405(g) is that the law judge "erred in evaluating Plaintiff's allegations of difficulty with social functioning" (Doc. 22, p. 2). The law judge found the plaintiff was moderately limited in social functioning, which he accommodated by restricting the plaintiff from any contact with the public and to only brief and superficial contact with co-workers (Tr. 20, 21, 24). The law judge also restricted the plaintiff to a low-stress work environment, which requires only simple decision-making with only a few changes in the workplace (Tr. 21). The plaintiff argues that the law judge should have found that he had severe and marked social functioning deficits that precluded him from working (see Doc. 22).

In this regard, the plaintiff relies on his hearing testimony that he lost jobs due to fighting with co-workers and a manager, and that he was incarcerated numerous times for battering or assaulting people (id., p. 6). The law judge, however, discounted the plaintiff's alleged anger management issues as not fully credible (Tr. 22-23). Thus, the plaintiff appears to be challenging the law judge's credibility determination, although he does not

develop such an argument, in violation of the scheduling Order (Doc. 14, p.

2).  The scheduling Order directs that each of the discrete challenges "must

be supported by citations to the record of the pertinent facts and by citations

of the governing legal standards" (id.).  The scheduling Order advises that

"[a]ny contention for which these requirements are not met is subject to being

disregarded for insufficient development" (id.).

On this issue, the plaintiff fails to provide the law judge's entire

explanation for his credibility determination and, therefore, the plaintiff

certainly has not shown that the law judge's credibility decision is inadequate.

Consequently, for this reason alone, the plaintiff's credibility challenge is

subject to abandonment (see Doc. 14).   In any event, the contention is

meritless.

The Eleventh Circuit has established a standard for evaluating

complaints of pain and other subjective complaints.  Dyer v. Barnhart, 395

F.3d 1206, 1210 (11th Cir. 2005).  As the court of appeals explained in Landry

v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required

evidence of an underlying medical condition and (1) objective medical

evidence that confirms the severity of the alleged pain arising from that

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 21). He also set forth the controlling principles (id.). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Further, the law judge acknowledged the plaintiff's testimony that he had been "fired from jobs repeatedly after losing control of his emotions [at] the workplace" and the plaintiff's allegation that he cannot control his anger (Tr. 21). Significantly, the law judge did not totally

discount the plaintiff's subjective complaints.  To the contrary, the law judge

concluded that the plaintiff had severe mental impairments which greatly

limited him to jobs that involve no contact with the general public, only "brief

and superficial" contact with co-workers, and a low-stress work environment,

which was defined as a job that requires only simple decision-making with

only a few changes in the workplace (id.).

The law judge explained that he discounted the plaintiff's

allegations of total disability because they were inconsistent with the

plaintiff's medical records and his lack of mental health treatment (Tr. 22-24).

Thus, consultative examiner Bruce R. Whiting, Ph.D., observed that,

notwithstanding the plaintiff's depressive symptoms and history of fighting,

the plaintiff was cooperative during the evaluation, oriented x4, his anxiety

level was within normal limits, and the plaintiff did not exhibit hallucinations,

delusions, paranoid ideation, or signs of organic impairment (Tr. 329-31).

The law judge accepted Dr. Whiting's opinion, and stated that the residual

functional capacity accounts for limitations noted by Dr. Whiting (Tr. 24).

Furthermore, non-examining reviewing psychologist Dr. Carol Deatrick, who

noted that the plaintiff had a "long hx [history] of antisocial behavior," opined

that the plaintiff was moderately limited in social functioning (Tr. 343, 345).

The law judge "accept[ed] and fully adopt[ed]" that opinion (Tr. 24).

Significantly, the plaintiff does not identify any opinions in the record of

more restrictive mental functioning.

The law judge also considered in discounting the plaintiff's

credibility the plaintiff's failure to seek treatment for his anger management

issues, which allegedly have existed for almost two decades (Tr. 22). The law

judge, moreover, noted that an examiner who performed a psychiatric

evaluation of the plaintiff at the Hillsborough County Sheriff's Office

doubted the truthfulness of the plaintiff's allegations and found that the

plaintiff was "malingering" (Tr. 22-23; see Tr. 287-90).

The plaintiff challenges the law judge's credibility determination

on the following basis (Doc. 22, pp. 5-6):

> [I]t is not entirely clear whether the ALJ believed
> that the claimant did not have difficulties in social
> functioning to the extent alleged, due to his failure
> to seek medical treatment for his psychiatric
> condition, or whether the ALJ determined that,
> while the claimant may have severe problems with
> social functioning, he failed to follow a prescribed
> course of treatment and that his condition would

have improved had he adhered to a prescribed
course of medical treatment.

However, the law judge stated unequivocally (and more than once) that he

found the former, i.e., that the plaintiff's failure to seek medical treatment for

his psychiatric condition undermined the plaintiff's credibility regarding the

severity of his mental impairments (Tr. 22). Thus, the law judge explained

(id.) (emphasis added):

> With respect to the claimant's anger management
> issues, the most glaring inconsistency in the record
> is the claimant's failure over at least 18 years to
> seek help for this condition (Exhibit 4F, 7F). The
> claimant himself admitted that for years his
> emotional problems have been a major impediment
> to maintaining employment. However, despite this
> obvious and acknowledged problem, the claimant
> has failed over the years to ... seek any sort of
> psychiatric treatment.... With such allegedly
> limiting symptoms, the undersigned would have
> expected the claimant to seek professional help.
> *The failure of the claimant to seek professional*
> *help for such a profoundly limiting condition is*
> *inconsistent with his allegations. This*
> *inconsistency seriously undermines the credibility*
> *of the claimant's allegations.*
>
> The undersigned also notes that a reluctance to
> seek medical attention cannot explain the
> claimant's failure to seek treatment for his severe
> mental impairments. The medical record shows

> that the claimant does not hesitate to visit the
> hospital to treat various physical problems.
> *Therefore, the claimant's failure to seek treatment*
> *for his mental impairments indicates, despite what*
> *he alleged at the hearing, that he must not view*
> *them as being that serious or limiting. Again, this*
> *inconsistency between his hearing allegations and*
> *his treatment seeking behavior greatly undermines*
> *the credibility of the claimant's allegations.*

Further, the law judge stated plainly that he was not making a finding one way or the other regarding whether mental health treatment would have resolved the plaintiff's mental impairments (Tr. 22-23). In this connection, the law judge stated that *"there is no evidence yet of whether [mental health treatment] will be effective in resolving the claimant's symptoms"* (Tr. 23) (emphasis in original).

Therefore, the plaintiff's contention is meritless that the law judge's reasoning for discounting his credibility is unclear. Further, the plaintiff has not undermined any of the law judge's reasons for discounting his credibility. Therefore, the plaintiff's contention that the law judge should have found that he had a disabling limitation in social functioning is unavailing. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

IV.

In a separate memorandum, the plaintiff states that he has submitted new and material evidence that warrants a remand (Doc. 23). New evidence may support a remand under sentence six of 42 U.S.C. 405(g). Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999). In order to obtain a remand, the plaintiff must demonstrate that (1) the evidence is new and not cumulative, (2) the evidence is material in that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the plaintiff's failure to submit the evidence at the appropriate level. Id. The plaintiff cannot satisfy all three of these criteria.

In connection with a new claim for benefits, the plaintiff underwent in October 2012 a consultative physical examination and a consultative psychological examination (Doc. 23, pp. 1-2). Thus, these evaluations occurred more than two and one-half years after the law judge issued his decision of January 22, 2010 (Tr. 26).

Good cause could be shown for not submitting this evidence to the law judge since this evidence was not in existence prior to the law judge's

decision.  However, as the Commissioner argues (Doc. 28, pp. 3-9), this evidence is not material.  Therefore, it does not support a remand.

Fred L. Alberts, Jr., Ph.D., conducted a psychological evaluation of the plaintiff on October 9, 2012 (Doc. 23-2, pp. 6-9).  In contrast to the plaintiff's "cooperative" conduct during Dr. Whiting's psychological evaluation, Dr. Alberts stated that the plaintiff was hostile and irritable (id., p. 8).  He assessed diagnoses of schizoaffective disorder, antisocial personality disorder, and cannabis and polysubstance dependence (id., p. 9). Dr. Whiting did not assess a diagnosis of schizoaffective disorder (see Tr. 331).

Dr. Alberts opined in a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (Doc. 23-2, pp. 3-5) that the plaintiff had a marked limitation in interacting appropriately with the public, and extreme limitations in interacting appropriately with supervisors, co-workers, and responding appropriately to usual work situations and to changes in a routine work setting (id., p. 4).  Importantly, in the Medical Source Statement Dr. Alberts did not include a response to the following question (id.):

> [I]f you have sufficient information to form an
> opinion within a reasonable degree of medical or
> psychological probability as to past limitations, on
> what date were the limitations you found above
> first present?

Further, the Medical Source Statement advised Dr. Alberts that, absent an

answer to this question, "[t]he limitations above are assumed to be your

opinion regarding current limitations only" (id., §(4)).  Consequently, Dr.

Alberts's opinion regarding the plaintiff's mental functioning in October

2012 does not relate back to the pertinent disability period.

Significantly, new evidence must relate to the period on or

before the date of the law judge's decision in order to be relevant. 20 C.F.R.

404.970(b);  Vlamakis v. Commissioner of Social Security, 172 Fed. Appx.

274, 277 (11th Cir. 2006); Gibbs v. Barnhart,  156 Fed. Appx. 243, 247 (11th

Cir. 2005), cert. denied, 547 U.S. 1077 (2006).  Dr. Alberts did not say within

a reasonable degree of medical probability that his opinion of the plaintiff's

psychological functioning related back for any period of time, much less two

and one-half years earlier when the law judge issued his decision in this case.

Therefore, there is not a reasonable possibility that Dr. Alberts's opinion

regarding the plaintiff's psychological functioning in October 2012 would change the law judge's decision in this case.

The plaintiff also cites to the opinion of Robin R. Hughes, M.D., who conducted a physical examination of the plaintiff on October 10, 2012 (see Doc. 23-1, pp. 3-14). Dr. Hughes opined in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) that the plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally; sit for six hours and stand/walk for 1 hour each in a workday; and occasionally engage in postural activities, reaching, handling, and fingering (id., pp. 9-14). Dr. Hughes also opined that the plaintiff's exposure to certain environmental conditions should be limited (see id., p. 13).

Dr. Hughes attributed these limitations to: (1) the plaintiff's altered gait (resulting from the insertion of a steel rod in his leg in 1997) which causes lower back pain and decreased range of motion, (2) joint weakness of the right hand due to flexion contracture deformity of the fourth digit of the right hand, and (3) early degenerative arthritis and crepitation to

-16-

the right shoulder (id., pp. 5, 9-14).[3] Dr. Hughes opined that these functional limitations were first present in 1997, fifteen years prior to his examination, when the plaintiff's leg was injured in a shooting (id., p. 14). The suggestion that Dr. Hughes could determine "within a reasonable degree of medical probability" that these functional limitations existed in 1997, fifteen years prior to his one-time examination of the plaintiff, is dubious.

The plaintiff argues that there is a reasonable possibility that the law judge would change his decision based on Dr. Hughes's Medical Source Statement because this evidence was "generated shortly after the Administrative Law Judge decision" and, therefore, "there is a reasonable probability that the Plaintiff's level of functioning was the same at the time of the Administrative Law Judge decision" (Doc. 23, p. 3). This contention is patently flawed because more than two and one-half years passed between the issuance of the law judge's decision and Dr. Hughes's evaluation of the plaintiff. Thus, there is no factual basis for the assertion that Dr. Hughes's opinion was generated shortly after the law judge's decision.

---

[3]Notably, Dr. Alberts, who had evaluated the plaintiff the previous day, observed that the plaintiff's "[g]ait and posture were normal" (Doc. 23-2, p. 8).

-17-

The plaintiff also argues that Dr. Hughes's Medical Source Statement is material evidence because his conditions are longstanding and existed at the time of the law judge's decision in this case (id., p. 2). However, the plaintiff does not provide any record evidence that the conditions underlying Dr. Hughes's opinion of functional limitations existed, and were as limiting, when the law judge issued his decision in this case two and one-half years earlier.

Further, Dr. Hughes's only basis for his opinion that the plaintiff's functional limitations relate back to 1997 is the plaintiff's "hip/leg" injury (Doc. 23-1, p. 14). Thus, Dr. Hughes does not assert that functional limitations caused by the other conditions (the flexion contracture deformity of the right fourth digit and early onset of arthritis in the right shoulder) existed prior to his evaluation in 2012 (see id.).

With regard to the plaintiff's hip/leg injury, the law judge found that the residuals of right tibular fracture repair was a severe impairment and he therefore limited the plaintiff to light work (Tr. 19, 21). Although Dr. Hughes's opined functional limitations are more restrictive (to the extent it can be discerned which limitations are applicable to the hip/leg injury), there

is not a reasonable possibility that Dr. Hughes's Medical Source Statement would change the law judge's decision.

First, Dr. Hughes's Medical Source Statement is conclusory in nature. Thus, Dr. Hughes's opinion consisted primarily of checkmarks on a form, and Dr. Hughes did not explain in any meaningful way his opinions of functional limitations. For example, there is no explanation regarding why the plaintiff's hip/leg injury would have been as limiting back in 1997 (see Doc. 23-1, p. 14). Such an explanation is especially pertinent considering that, following the leg injury in 1997, the plaintiff played basketball and continued to work as a cook (see Tr. 38, 43, 251). Therefore, the conclusory nature of  Dr. Hughes's opinions alone provides a recognized basis for discounting the questionnaire. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Furthermore, the plaintiff has not given any basis to conclude that the law judge would accept Dr. Hughes's opinion, generated more than two and one-half years after he issued his decision, especially since it does not overcome one of the law judge's primary considerations in finding that

-19-

a more restrictive physical residual functional capacity was not warranted.

In this respect, the law judge stated (Tr. 22):

> [T]he claimant ... repeatedly held jobs for between 5 to 9 months from 1997 through 2007. As the vocational expert testified, many (if not most) of the jobs held by the claimant were at the medium exertional level, and often involved prolonged standing and walking.... The claimant himself admitted at the hearing that he did not lose these jobs because of an inability to meet the physical demands of these jobs, but because of fights and confrontations with other individuals.

Further, the plaintiff testified at the hearing that he had recently worked as a cook for more than five months, and had only stopped working because he was suspended for fighting (Tr. 50-51). In fact, the plaintiff testified, "If I work by myself, I'm good" (Tr. 58).

In sum, the plaintiff has failed to show that the Medical Source Statements of Dr. Hughes or Dr. Alberts are relevant evidence upon which to base a remand because the plaintiff has not shown that there is a reasonable possibility that this evidence would change the law judge's decision in this case. Rather, these opinions are appropriately considered in connection with the plaintiff's subsequent application for benefits.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. Furthermore, the Motion for Remand Under Sentence Six of 45 [sic] U.S.C. §405(g) (Doc. 23) is **DENIED**.  The Clerk is directed to enter judgment accordingly and to CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 28th day of March, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE